**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| Jonathan Clark, derivatively on behalf of Hyliion Holdings Corp.,<br><br>Plaintiff,<br><br>v.<br><br>Thomas Healy, Jon Panzer, Rodger Boehm, Jeffrey Craig, Vincent Cubbage, Richard Freeland, Mary Gustanski, Robert Knight, Jr., and Melanie Trent,<br><br>Defendants,<br><br>-and-<br><br>Hyliion Holdings Corp., a Delaware corporation,<br><br>Nominal Defendant. | Case No. 1:26-cv-2847<br><br>JURY TRIAL DEMANDED |

Plaintiff Jonathan Clark ("Plaintiff"), derivatively on behalf of Hyliion Holdings Corp. ("Hyliion" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties, gross mismanagement, waste of corporate assets, unjust enrichment, and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *Draftz v. Hyliion Holdings Corp. et al.* (W.D. Tex. Case No. 1:26-cv-02369) (the "Securities Class Action"); (iii) corporate governance documents available on the Company's website; (iv) media reports; and (v) other publicly available information.

## NATURE OF THE ACTION

1. This is a stockholder derivative action brought by Plaintiff, a stockholder of Hyliion, on behalf of the Company against the Defendants. This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least May 12, 2026 to June 23, 2026 (the "Relevant Time Period"). During that time, the Defendants (as defined herein) caused or allowed Hyliion to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2. Hyliion is a developer of modular power plant technology focused on commercializing its KARNO Power Module. In May 2026, the Company announced that it had entered into a non-binding letter of intent with VFG Holdings, LLC ("VFG") concerning potential deployment of KARNO Power Modules for data-center applications. The announcement was presented as an important step in Hyliion's commercialization strategy and was followed by a significant increase in the Company's stock price.

3. Beginning on May 12, 2026, Hyliion and certain of its senior officers publicly characterized the VFG arrangement as a significant "strategic partnership" involving potential deployment of up to 250 KARNO Cores, or approximately 50 megawatts of power-generation capacity, over five years. Chief Executive Officer Thomas Healy further represented that VFG was a developer of advanced data centers, that its team consisted of "industry veterans," and that VFG was planning "multiple gigawatts of power production in the years ahead." These statements allegedly materially overstated the substance, capabilities, and prospects of VFG and the likelihood that the contemplated deployments would occur.

4. In reality, VFG had only been formed in January 2026, appeared to have approximately four employees, had little apparent business activity apart from its announced

relationship with Hyliion, and maintained only a minimal online presence. On June 23, 2026, Pelican Way Research published a report questioning the legitimacy and economic substance of the VFG relationship and VFG's ability to perform the contemplated transaction. Following publication of the report, Hyliion's stock price fell 17.2% on June 23 and an additional 19.3% on June 24. As a result of the alleged misconduct, Hyliion has been exposed to securities litigation, legal and investigative expenses, reputational harm, and other losses, while certain Company insiders allegedly sold Hyliion shares following the VFG announcement and the resulting increase in the Company's stock price.

5. Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements, as well as the inadequate internal controls that allowed the misconduct to occur, in breach of their fiduciary duties to the Company.

## PARTIES

### A. Plaintiff

6. Plaintiff Jonathan Clark is a current stockholder of Hyliion and has continuously held Hyliion stock during all times relevant hereto and is committed to retaining Hyliion shares through the pendency of this action to preserve Plaintiff's standing. Plaintiff will adequately and fairly represent the interests of Hyliion and its stockholders in enforcing its rights.

### B. Nominal Defendant

7. Nominal Defendant Hyliion is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 1202 BMC Drive, Suite 100, Cedar Park, Texas 78613. Hyliion common stock trades on the NYSE under the ticker symbol "HYLN."

**C. Individual Defendants**

8. Defendant Thomas Healy has served as Chief Executive Officer ("CEO") and a director of the Company since October 2020.

9. Defendant Rodger Boehm has been a director of the Company since March 2023.

10. Defendant Jeffrey Craig has been a director of the Company since January 2022 and serves as Chair of the Board.

11. Defendant Vincent Cubbage has been a director of the Company since October 2020.

12. Defendant Richard Freeland has been a director of the Company since March 2023.

13. Defendant Mary Gustanski has been a director of the Company since August 2021.

14. Defendant Robert Knight, Jr. has been a director of the Company since October 2020.

15. Defendant Melanie Trent has been a director of the Company since March 2023.

16. Defendants Healy, Boehm, Craig, Cubbage, Freeland, Gustanski, Knight, and Trent are herein referred to collectively as the "Director Defendants."

17. Defendant Jon Panzer has served as the Company's Chief Financial Officer ("CFO") since September 2022.

18. Defendants Healy and Panzer are herein referred to collectively as the "Officer Defendants." The class action complaint identifies Healy as Hyliion's CEO and Panzer as its CFO at all relevant times.

19. The Director Defendants and Officer Defendants are referred to collectively herein as the "Individual Defendants."

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

21. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

22. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this court under 28 U.S.C. § 1391, because Hyliion is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Company Background

24. The Company describes itself as a developer of modular power plant technology. Hyliion's common stock trades on the NYSE American exchange under the ticker symbol "HYLN."

25. During the Relevant Time Period, Hyliion was focused on the development and commercialization of its KARNO Power Module, a modular power-generation system intended for a variety of applications, including data centers. In reporting its first-quarter 2026 results, the Company represented that it had made progress toward its 2026 deployment and

commercialization objectives, including completing UL non-recurring testing of the KARNO Power Module, demonstrating multi-fuel flexibility, and working toward commercialization of the product by year-end 2026.

26. As part of those commercialization efforts, Hyliion sought to position the KARNO Power Module as a potential solution for the growing demand for on-site power generation for data-center applications. On May 12, 2026, the Company announced that it had entered into a non-binding letter of intent with VFG Holdings, LLC ("VFG") to pursue deployment opportunities involving up to 250 KARNO Cores, representing approximately 50 megawatts of power-generation capacity over a five-year period. The Company described VFG as a provider of turnkey data-center solutions encompassing power infrastructure, compute systems, site development, and financing.

27. The following day, Chief Executive Officer Thomas Healy further emphasized the importance of the data-center market to Hyliion's commercialization strategy, stating that the Company was seeing "strong and growing demand from data center customers" and was actively engaging with leading participants in that market. Healy characterized the VFG arrangement as a "strategic partnership" through which the parties planned to deploy KARNO Power Modules at VFG data-center sites to demonstrate the platform's capabilities. The contemplated arrangement, however, remained subject to execution of a definitive purchase agreement.

**B. Hyliion's False and Misleading Statements**

28. During the Relevant Time Period, Hyliion and its executive officers made materially false and misleading statements about (a) the nature, substance, and prospects of the Company's purported strategic partnership with VFG Holdings, LLC ("VFG"); (b) VFG's business operations, experience, resources, and ability to develop and finance large-scale data-center projects; and (c) the likelihood that the contemplated deployment of up to 250 KARNO

Cores, representing approximately 50 megawatts of power-generation capacity, would materialize and contribute meaningfully to Hyliion's commercialization efforts.

29. On May 12, 2026, Hyliion announced its first-quarter 2026 financial results in a press release entitled "Hyliion Holdings Reports First-Quarter 2026 Financial Results" (the "Q1 Press Release"). Among other things, the Q1 Press Release announced that Hyliion had entered into a non-binding letter of intent (the "LOI") with VFG Holdings, LLC ("VFG"), which the Company presented as a strategic relationship intended to support deployment of its KARNO Power Modules in data-center applications. The Q1 Press Release stated:

> Hyliion and VFG Holdings, LLC entered into a non-binding Letter of Intent ("LOI") establishing a strategic partnership focused on deploying KARNO Power Modules for advanced next-generation data center applications. The parties intend to pursue deployment opportunities totaling up to 250 KARNO Cores, or 50 megawatts of power generation capacity, over the next five years. VFG develops turnkey data center solutions, including power infrastructure, compute systems, site development, and financing. The parties expect to provide additional updates regarding the collaboration and initial deployment opportunities in future periods.

30. The Q1 Press Release also attributed the following statement to Defendant Healy concerning the Company's progress toward commercialization and the significance of the newly announced relationship with VFG:

> The first quarter delivered tangible progress against the deployment-and-commercialization plan we outlined for 2026, including completion of UL non-recurring testing on the KARNO Power Module, a new data center partnership with VFG Holdings, demonstrated multi-fuel flexibility, and four times the revenue of the prior quarter[.] Our focus for the balance of the year remains on execution as we work toward commercialization of the KARNO Power Module by year end.

31. The statements set forth above were materially false and misleading when made because they overstated the substance, prospects, and commercial significance of Hyliion's relationship with VFG. At the time of the statements, VFG had only been formed in January 2026, appeared to employ approximately four individuals, and had not publicly disclosed meaningful

business activity apart from its announced relationship with Hyliion. Those circumstances materially undermined the impression conveyed by Defendants that VFG was an established and commercially significant partner capable of supporting the contemplated deployments.

32. The following day, on May 13, 2026, Hyliion conducted its first-quarter 2026 earnings call (the "Q1 Call"). During his opening remarks, Defendant Healy again emphasized that Hyliion had "signed a new data center partnership with VFG Holdings." Healy thereafter elaborated on the asserted importance and capabilities of VFG, stating:

> We are also seeing strong and growing demand from data center customers. The need for on-site fuel flexible power generation is becoming increasingly important, and we are actively engaging with the leading players in the market. In that context, I am pleased to announce a new strategic partnership with VFG Holdings. Hyliion and VFG holdings have executed a nonbinding letter of intent, to deploy up to 250 KARNO cores or approximately 50-megawatts of power over the next 5 years. VFG is a developer of advanced next-generation data centers and offers turnkey solutions, including power, infrastructure, compute and financing. The team at VFG is comprised of industry veterans from some of the largest data center companies and is planning multiple gigawatts of power production in the years ahead. Under this partnership, the parties plan to deploy KARNO Power Modules at VFG's data center sites to demonstrate the unique benefits of the KARNO platform, including lower-than-grid electricity production costs true fuel-agnostic operation and direct 800-volt DC integration. We plan to share more details on the partnership in the periods ahead. The LOI between Hyliion and VFG is subject to the execution of a definitive purchase agreement.

33. These statements were also materially false and misleading when made. Contrary to the impression created by Healy's description of VFG and its prospects, VFG did not appear to have conducted meaningful business operations. Moreover, Healy's representations that the "team at VFG is comprised of industry veterans" and that VFG was "planning multiple gigawatts of power production in the years ahead" materially overstated VFG's business credentials and apparent ability to perform under the contemplated relationship. At the time, VFG had only recently been formed in January 2026 and appeared to have only approximately four employees,

facts that called into question the Company's portrayal of VFG and the likelihood that the contemplated deployments would materialize.

34. The market reacted positively to Hyliion's announcement and Defendants' statements concerning VFG. Hyliion's common stock increased from $2.68 per share on May 12, 2026, immediately before the challenged disclosures, to $3.59 per share on May 13, 2026. By May 15, 2026, the stock had risen further to $4.67 per share. On May 19, 2026, Hyliion's common stock traded between $3.81 and $4.23 per share, materially above its May 12 closing price.

35. The Class Action Complaint further alleges that, using Rule 10b5-1 trading plans, certain Company officers timed the announcement of the VFG LOI and the ensuing appreciation in Hyliion's stock price so that stock sales would occur shortly after the VFG announcement. According to those allegations, the timing of the sales further supports an inference that Defendants knew, or recklessly disregarded, that their statements concerning the prospects of the VFG relationship materially overstated the substance and commercial significance of the arrangement before the market had a meaningful opportunity to investigate VFG and evaluate whether the relationship was likely to generate material financial benefits for Hyliion.

36. On May 19, 2026, a Form 144 was filed with the SEC on behalf of Defendant Healy reporting a proposed sale of 30,000 shares of Hyliion common stock with an aggregate market value of approximately $125,000.

37. Also on May 19, 2026, a Form 144 was filed with the SEC on behalf of Defendant Panzer reporting a proposed sale of 15,000 shares of Hyliion common stock with an aggregate market value of approximately $61,000.

38. On the same date, a Form 144 was filed with the SEC on behalf of Govindaraj Ramasamy reporting a proposed sale of 15,000 shares with an aggregate market value of approximately $61,000.

39. Likewise, on May 19, 2026, a Form 144 was filed with the SEC on behalf of Jose Oxholm reporting a proposed sale of 15,000 shares with an aggregate market value of approximately $61,000.

40. Further, on May 19, 2026, a Form 144 was filed with the SEC on behalf of Joshua Mook reporting a proposed sale of 15,000 shares.

41. The statements identified above were materially false and/or misleading because they misrepresented and failed to disclose material adverse facts concerning Hyliion's business, operations, and prospects that were known to, or recklessly disregarded by, Defendants. Specifically, Defendants failed to disclose that: (a) VFG was a recently formed entity that did not appear to have meaningful business operations commensurate with the scale of the relationship Hyliion publicly described; (b) the Company and certain of its officers announced and promoted the VFG relationship in a manner that caused Hyliion's stock price to appreciate shortly before Company insiders sold shares; and (c) as a result, Defendants' statements concerning the VFG relationship and Hyliion's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis when made.

**C. The Truth is Revealed**

42. On June 23, 2026, Pelican Way Research ("Pelican Way") published a report concerning Hyliion entitled "Hyliion: A Glorified Science Project Who Has Continuously Failed to Meet Expectations And Is Now Throwing Around A Meaningless Deal" (the "Report"). The Report questioned the legitimacy and commercial substance of Hyliion's purported relationship

with VFG and challenged Defendants' prior representations concerning VFG's capabilities and prospects. Hyliion has not publicly responded to the substance of the Report.

43. Among other things, the Report stated that Pelican Way believed the announced LOI with VFG "is a sham because the counterparty (VFG Holdings, or legally VFG Tech Holdings, LLC) does not appear to have any substance." The Report further observed that the "VFG entity was registered just a few months ago in January 2026."

44. The Report also examined VFG's online presence and noted that its "website contains just two pages, a home page and a contact form, with no listed address." Plaintiff's counsel in the Securities Class Action subsequently reviewed VFG's website and confirmed that, as of July 20, 2026, the website remained consistent with that description.

45. The Report further questioned whether VFG possessed the operational capabilities that Defendants had attributed to it. Specifically, the Report noted that "[t]he man behind the entity, Jason Green, runs a [second company at the same time,]" which further called into question whether VFG was in fact an "AI data center integrator" capable of carrying out the transaction described in Hyliion's Q1 Press Release.

46. The Report additionally stated that VFG appeared to have only four employees. Counsel for the plaintiff in the Securities Class Action reviewed VFG's LinkedIn page and confirmed that representation as of July 20, 2026. The Report also observed that VFG's only LinkedIn post concerned its LOI with Hyliion, further raising questions concerning whether VFG had any meaningful business operations apart from its announced relationship with the Company.

47. In support of its conclusions concerning VFG's limited operations and resources, the Report included images depicting information concerning VFG and its purported personnel and business activities.

48. The Report also reproduced images from VFG's website, which it characterized as "barely functioning," further undermining Defendants' prior portrayal of VFG as an established developer capable of pursuing large-scale, next-generation data-center projects.

49. The Report further presented information showing that the vfgholdings.com domain had only been registered in December 2025. The relatively recent creation of VFG's website, together with its limited functionality, further called into question whether VFG possessed the infrastructure and established operations necessary to undertake the sophisticated data-center projects described by Defendants.

50. The Report also examined the business activities of Jason Green, VFG's co-founder and CEO. In particular, the Report stated that Green "appears to be running multiple companies at the same time," and further observed that "Jason [Green's] other venture is only worth $2.8mm, we find it unlikely he could raise the hundreds of millions needed to pay Hyliion." These facts further called into question VFG's financial capacity to undertake projects of the scope Defendants had described.

51. Counsel for the plaintiff in the Securities Class Action also reviewed VFG's LinkedIn page and observed that, as of July 20, 2026, its only post concerned the purported partnership with Hyliion. The absence of other apparent business activity further raised questions concerning whether Hyliion could reasonably expect to derive material value from its relationship with VFG.

52. The Report also addressed Defendant Healy's history at Hyliion, stating that he "appears to be a long-time promoter." The Report noted that Hyliion became a publicly traded company through a SPAC transaction in 2020, at which time the Company was focused principally on electric-truck technology.

53. In discussing the Company's subsequent change in strategic focus, the Report stated that "Hyliion's latest pivot is brought to you by Healy because he is an expert salesman, and in this case, we think he's selling investor's a second pipe dream after they got incinerated on the last deal."

54. The Report further questioned the timing of the VFG announcement in light of Hyliion's financial position, stating that the "VFG deal is suspiciously timed right as Hyliion's cash pile is dwindling." The Report explained:

> We believe that the deal with VFG Holdings is conveniently timed right as the company's cash reserves [are] running lower. Currently, Hyliion sits with just ~$139.3mm in current assets according to their latest 10Q. Hyliion currently loses ~$50mm a year as of their FY25 10K, this means that the company has ~33 months left before they run out of cash, we think they will end up spending more cash as they make an attempt at commercialization. In our experience, we have found that companies seem to like to dilute right around when they have ~18 months of cash left. We think right now, on the back of the dubious LOI which sent shares soaring is the opportune time to dilute shareholders in order to continuously line management's pockets and continue on the never-ending road of being a science project.

55. The Report included additional imagery and financial information in support of its discussion of Hyliion's cash position and the timing of the VFG announcement.

56. The market reacted sharply following publication of the Report. On June 23, 2026, Hyliion's common stock declined $1.27 per share, or approximately 17.2%, to close at $6.10 per share. On June 24, 2026, the stock fell an additional $1.18 per share, or approximately 19.3%, closing at $4.92 per share.

57. As a result of the Individual Defendants' alleged misconduct and the revelation of information concerning the true nature and prospects of the VFG relationship, Hyliion suffered substantial harm, including exposure to securities litigation, legal and investigative expenses, reputational harm, and damage associated with the significant decline in the market value of its common stock.

**D. Defendants' Misconduct Has and Continues to Harm the Company**

58. As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Class Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

59. Hyliion's reputation and goodwill have also been damaged by the Defendants' misconduct. Numerous shareholder investigations have been commenced by private law firms representing Company investors.

60. Preceding and continuing into the Relevant Time Period, the Company provided substantial compensation to the Officer Defendants. From 2023 through 2025, Hyliion awarded to, paid to, or otherwise provided Defendants Healy and Panzer with aggregate compensation exceeding $10.6 million, including approximately $7.4 million to Healy and $3.3 million to Panzer. The Officer Defendants continued to serve in their highly compensated executive positions throughout the Relevant Time Period.

| **Fiscal Year** | **Healy** | **Panzer** | **Combined** |
|---|---|---|---|
| 2023 | $1,711,250 | $921,500 | $2,632,750 |
| 2024 | $2,655,900 | $1,170,950 | $3,826,850 |
| 2025 | $2,991,096 | $1,172,862 | $4,163,958 |

61. The Defendants failed to oversee and manage the Company in accordance with their fiduciary duties and Company policies, making the compensation provided by the Company excessive. The Officer Defendants also received substantial equity-based compensation during the years preceding the Relevant Time Period. The Board has not clawed back any of this compensation.

62. Hyliion's reputation and goodwill have also been damaged by the Defendants' misconduct. In addition, the Board failed to ensure that it conducted a thorough investigation into the effectiveness of the Company's internal controls over financial reporting.

63. The Company has already incurred and will continue to incur costs to remediate the deficiencies in its internal controls over financial reporting, as well as to defend against the Securities Class Action and additional shareholder claims.

**E. Hyliion Issues False and Misleading Proxy Statements**

64. In addition to the false and misleading statements discussed above, the Director Defendants also caused the Company to issue a false and misleading Schedule 14A Proxy Statement filed with the SEC on April 8, 2026 (the "2026 Proxy"), shortly before the commencement of the Relevant Time Period and in connection with the Company's May 19, 2026 Annual Meeting of Stockholders, which occurred during the Relevant Time Period.

65. The Director Defendants drafted, approved, reviewed, and/or signed the 2026 Proxy before it was filed with the SEC and disseminated to Hyliion's stockholders. The Director Defendants negligently issued materially misleading statements in the 2026 Proxy. These allegations are based solely on negligence; they are not based on any allegations of recklessness or knowing conduct by or on behalf of the Director Defendants, and they do not allege, or sound in, fraud. Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the 2026 Proxy allegations and related claims.

66. In connection with the May 19, 2026 Annual Meeting, the Director Defendants highlighted the Board's purported oversight of the Company in the 2026 Proxy. The 2026 Proxy stated:

**Role of the Board in Risk Oversight**

> One of the key functions of the Board is informed oversight of our risk management process. The Board does not have a standing risk management committee but administers this oversight function directly through the Board as a whole, as well as through various standing committees of the Board that address risks inherent in their respective areas of oversight. In particular, the Board is responsible for monitoring and assessing strategic risk exposure and our Audit Committee has the responsibility to consider and discuss our major financial risk exposures and the steps our management will take to monitor and control such exposures, including guidelines and policies to govern the process by which risk assessment and management is undertaken. Our Audit Committee also monitors compliance with legal and regulatory requirements. Our Compensation Committee assesses and monitors whether our compensation plans, policies and programs comply with applicable legal and regulatory requirements. Our Nominating and Corporate Governance Committee assesses and monitors the Company's relevant risks and opportunities around environmental, social, and governance ("ESG") issues.

67. The 2026 Proxy thus assured stockholders that the Director Defendants understood Company-wide risks, actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, the Director Defendants were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements concerning (a) the nature, substance, and prospects of the Company's purported strategic partnership with VFG Holdings, LLC ("VFG"); (b) VFG's business operations, experience, resources, and ability to develop and finance large-scale data-center projects; and (c) the likelihood that the contemplated deployment of up to 250 KARNO Cores, representing approximately 50 megawatts of power-generation capacity, would materialize and contribute meaningfully to Hyliion's commercialization efforts.

68. As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect Defendants Boehm, Gustanski, and Knight to the Board.

**F. The Board Breached its Fiduciary Duties**

69. As officers and/or directors of Hyliion, the Defendants owed Hyliion fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Hyliion in a fair, just, honest, and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of Hyliion, the absence of good faith on their part, and a reckless disregard for their duties to the Company, despite their awareness, or constructive awareness, that such conduct posed a risk of serious injury to the Company.

70. Defendants, because of their positions of control and authority as directors and/or officers of Hyliion, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Hyliion's financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

71. To discharge their duties, the officers and directors of Hyliion were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Hyliion were required to, among other things:

(a) Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b) Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d) Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time, including ensuring that any statements about the Company's financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e) Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f) Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g) Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

72. The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

73. The Board's Audit Committee is tasked with overseeing Hyliion's financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Hyliion's internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

- overseeing the Company's accounting and financial reporting processes, systems of internal control, financial statement audits, and the integrity of the Company's financial statements;

- assisting the Board in overseeing the Company's legal and regulatory compliance, including risk assessment;

- reviewing the Company's quarterly and annual financial statements, Management's Discussion and Analysis, and Risk Factors, as appropriate, with management and the independent auditors;

- reviewing and discussing proposed earnings press releases and other publicly disseminated financial information and guidance concerning the Company's results of operations;

- reviewing and discussing the Company's processes and policies for identifying, managing, and assessing risks in all areas of the Company's business, including major financial risk exposures and management's efforts to monitor, mitigate, and control those risks;

- overseeing the scope, design, adequacy, and effectiveness of the Company's internal control over financial reporting and its disclosure controls and procedures;

- reviewing management's efforts to ensure compliance with applicable laws, stock exchange requirements, and the Company's Code of Business Conduct and Ethics; and

- reviewing legal and regulatory compliance and any actual, pending, or threatened legal or financial matters that could significantly affect the Company's business or financial statements.

74. In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Knight, Boehm, and Gustanski (with Defendant Knight serving as Chair) (the "Audit Committee Defendants") conducted little, if any, oversight of the Company's internal controls over financial reporting and consciously disregarded their duties to monitor such controls, resulting in materially false and misleading statements regarding the Company's business. The Audit Committee Defendants' complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

75. In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act, the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company maintaining adequate internal controls and compliance with applicable rules and regulations.

76. The Audit Committee Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of the Audit Committee Charter have inflicted, and will continue to inflict significant harm on Hyliion.

## DERIVATIVE ALLEGATIONS

77. Plaintiff brings this action derivatively in the right and for the benefit of Hyliion to redress injuries suffered by Hyliion as a direct result of the Director Defendants' breaches of fiduciary duty. Hyliion is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

78. Plaintiff will adequately and fairly represent the interests of Hyliion in enforcing and prosecuting the Company's rights.

79. Plaintiff was a stockholder of Hyliion at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a Hyliion stockholder.

## DEMAND FUTILITY ALLEGATIONS

80. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation set forth as though fully set forth herein.

81. The Hyliion Board currently has eight members: Healy, Craig, Boehm, Cubbage, Freeland, Gustanski, Knight, and Trent.

82. Plaintiff has not made any demand on Hyliion's current Board to institute this action against the Director Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

83. The Director Defendants had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations,

prospects, internal controls, and financial statements were accurate. In addition, the Director Defendants owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.

84. The Director Defendants' making or authorization of the false and misleading statements discussed above caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Hyliion. The failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence, constitute breaches of fiduciary duties that have resulted in the Director Defendants facing a substantial likelihood of liability. The Director Defendants could not fairly and fully prosecute this action or any other action concerning the misconduct described above.

### A. Demand is Excused as to Defendant Healy

85. Defendant Healy is Hyliion's founder and Chief Executive Officer and served as a director throughout the Relevant Time Period. In 2025, Hyliion awarded to, paid to, or otherwise provided Healy total compensation of $2,991,096. The 2026 Proxy expressly states that Healy "is not independent because of his service as our CEO."

86. As Hyliion's CEO and a member of the Board, Healy was responsible for managing the Company and owed fiduciary duties to ensure that the Company's SEC filings, earnings releases, investor communications, and other public statements concerning its business,

operations, prospects, and internal and disclosure controls were accurate and not materially misleading.

87. Healy directly participated in the misconduct alleged herein. On May 12, 2026, Hyliion issued its first-quarter 2026 earnings release announcing the VFG relationship and characterizing it as a new data-center "partnership." Healy personally represented that the quarter demonstrated "tangible progress" toward commercialization. The following day, Healy described VFG as a developer of advanced data centers, represented that its team was "comprised of industry veterans," and stated that VFG was "planning multiple gigawatts of power production in the years ahead."

88. Healy signed Hyliion's May 12, 2026 Form 10-Q as the Company's Principal Executive Officer. In connection with that filing, Healy certified that he had evaluated the Company's disclosure controls and procedures and that material information was required to be made known to him so that appropriate disclosure decisions could be made. Healy also signed the May 12, 2026 Form 8-K that furnished the earnings release containing the challenged VFG statements.

89. Moreover, the Securities Class Action alleges that, shortly after the VFG announcement and the resulting appreciation in Hyliion's stock price, Healy sold 30,000 shares of Hyliion stock for approximately $125,000 pursuant to a Rule 10b5-1 trading plan.

90. Healy is also a named defendant in the Securities Class Action, which asserts claims under Sections 10(b) and 20(a) of the Exchange Act arising from the same alleged false and misleading statements. Accordingly, Healy faces a substantial likelihood of personal liability arising from the misconduct alleged herein and cannot impartially consider a demand that Hyliion pursue claims based upon his own conduct.

**B. Demand is Excused as to Defendant Knight**

91. Defendant Knight served as a director throughout the Relevant Time Period. The 2026 Proxy reports that Knight received $225,000 in compensation for his service as a Hyliion director during 2025, consisting of $100,000 in cash compensation and $125,000 in stock awards. This compensation is alleged as context concerning Knight's continuing relationship with the Company and is not, standing alone, the basis for demand futility.

92. Knight served as Chair of the Audit Committee throughout the Relevant Time Period and was designated by the Board as an "audit committee financial expert." The Audit Committee consisted of Knight, Boehm, and Gustanski.

93. The Audit Committee's responsibilities included overseeing Hyliion's financial reporting and internal-control processes, assisting the Board with legal and regulatory compliance and risk assessment, reviewing proposed earnings releases and other publicly disseminated financial information and guidance, reviewing risk-identification and risk-management processes, and overseeing the adequacy and effectiveness of the Company's disclosure controls and procedures.

94. The Charter further delegated to the Audit Committee Chair specific authority to review with management the Company's proposed earnings press releases and other publicly disseminated financial information and guidance. Thus, Knight had particularized oversight responsibilities concerning the very earnings release through which Hyliion first announced and promoted the VFG relationship.

95. Nevertheless, Hyliion's May 12, 2026 earnings release allegedly portrayed VFG as a commercially significant partner capable of supporting deployment of up to 250 KARNO Cores

without adequately disclosing that VFG had only recently been formed, appeared to employ approximately four people, and had little apparent business activity.

96. In light of Knight's specific responsibilities as Audit Committee Chair for earnings-release review, disclosure controls, risk assessment, and regulatory compliance, Plaintiff alleges that Knight knowingly or consciously disregarded his oversight obligations and permitted materially misleading information to be disseminated to investors. Knight therefore faces a substantial likelihood of liability for breach of his fiduciary duties, rendering demand upon him futile.

**C. Demand is Excused as to Defendant Boehm**

97. Defendant Boehm served as a director throughout the Relevant Time Period. The 2026 Proxy reports that Boehm received $200,000 in director compensation during 2025, consisting of $75,000 in cash compensation and $125,000 in stock awards. This compensation is relevant context but is not alleged, by itself, to render Boehm incapable of considering a demand.

98. During the Relevant Time Period, Boehm served on both the Audit Committee and Technology Committee.

99. As an Audit Committee member, Boehm was charged with oversight of the Company's disclosure controls and procedures, earnings-related disclosures, risk-management processes, and legal and regulatory compliance. The Audit Committee was specifically charged with reviewing proposed earnings releases and the Company's processes for identifying, assessing, and managing risks throughout its business.

100. Boehm's Technology Committee responsibilities further implicated the challenged conduct. Hyliion represented that the Technology Committee assisted the Board in overseeing the Company's product and technology roadmaps, provided input to management concerning

technology strategy, including the assessment of "technology partnerships or acquisitions," and advised the Board concerning collaborative efforts and alliances.

101. The purported VFG transaction was precisely the type of strategic technology partnership encompassed by those responsibilities: Hyliion promoted VFG as a strategic partner through which the Company expected to deploy its principal KARNO technology into the data-center market.

102. Despite Boehm's overlapping Audit Committee and Technology Committee responsibilities, Hyliion allegedly disseminated materially misleading statements concerning VFG's operations, capabilities, and ability to perform under the contemplated arrangement. Plaintiff therefore alleges that Boehm consciously disregarded his specific oversight responsibilities and faces a substantial likelihood of liability for breach of his fiduciary duties.

**D. Demand is Excused as to Defendant Gustanski**

103. Defendant Mary Gustanski served as a director throughout the Relevant Time Period. The 2026 Proxy reports that Gustanski received $215,000 in director compensation during 2025, consisting of $90,000 in cash compensation and $125,000 in stock awards. This compensation is alleged as contextual evidence and not as an independent basis for concluding that Gustanski lacked independence.

104. During the Relevant Time Period, Gustanski served as a member of the Audit Committee and as Chair of the Technology Committee.

105. Through her Audit Committee membership, Gustanski was responsible for oversight of Hyliion's disclosure controls, earnings-related disclosures, risk-identification and risk-management processes, and legal and regulatory compliance. The Audit Committee was

specifically charged with reviewing proposed earnings releases and overseeing the scope, design, adequacy, and effectiveness of the Company's disclosure controls and procedures.

106. Gustanski's responsibilities as Chair of the Technology Committee provided an additional and independent connection to the challenged VFG transaction. The Technology Committee was responsible for oversight of Hyliion's product and technology roadmaps and for providing input regarding technology strategy, including technology partnerships, collaborative arrangements, and alliances.

107. Accordingly, Gustanski held overlapping oversight responsibilities concerning both the Company's public disclosures and the substance of technology partnerships such as the VFG arrangement. Plaintiff alleges that Gustanski knowingly or consciously disregarded those responsibilities and permitted Hyliion to promote the VFG relationship without adequately disclosing material facts concerning VFG's limited operations and apparent capabilities. Gustanski therefore faces a substantial likelihood of liability for breach of fiduciary duty.

**E. Demand is Excused as to Defendant Craig**

108. Defendant Craig served as a director and Chair of the Board throughout the Relevant Time Period. The 2026 Proxy reports that Craig received $250,000 in director compensation during 2025, consisting of $125,000 in cash compensation and $125,000 in stock awards. Plaintiff does not contend that this compensation, standing alone, establishes a lack of independence.

109. As Chair, Craig occupied the Board's principal leadership position. Hyliion represented that the Board's primary responsibilities included providing oversight, strategic guidance, counseling, and direction to management. The Company further represented that the Board was responsible for monitoring and assessing the Company's strategic risk exposure.

110. The VFG relationship concerned a central strategic initiative—the commercialization of the KARNO Power Module in the rapidly developing data-center market. Hyliion publicly characterized the VFG arrangement as a strategic partnership involving potential deployment of up to 250 KARNO Cores, or approximately 50 megawatts of generation capacity.

111. Craig therefore had Board-level responsibility for oversight of the strategic risks implicated by the purported partnership and the representations concerning its significance to Hyliion's commercialization strategy. Plaintiff alleges that Craig consciously disregarded those responsibilities and permitted the Company to disseminate materially misleading representations concerning a purported strategic relationship central to Hyliion's business strategy, thereby exposing the Company to substantial litigation and reputational harm.

**F. Demand is Excused as to Defendant Cubbage**

112. Defendant Cubbage served as a director throughout the Relevant Time Period. The 2026 Proxy reports that Cubbage received $215,000 in director compensation during 2025, consisting of $90,000 in cash compensation and $125,000 in stock awards. Such compensation is alleged as context and is not, standing alone, the basis for demand futility.

113. During the Relevant Time Period, Cubbage served as Chair of the Compensation Committee and as a member of the Nominating and Corporate Governance Committee.

114. The Compensation Committee was responsible for establishing and overseeing performance goals relevant to executive compensation and administering the Company's equity and cash incentive programs. Hyliion's 2026 Proxy further disclosed that its 2025 executive incentive program included performance measures directly tied to advancement and commercialization of the KARNO Power Module and that its equity incentive structure included awards tied to the Company's stock price.

115. Cubbage therefore participated in a Board committee responsible for establishing and overseeing compensation incentives tied to the same commercialization efforts that Defendants invoked in promoting the purported VFG partnership. Plaintiff alleges that, notwithstanding those responsibilities and his Board-level obligation to oversee strategic risk, Cubbage failed to act in good faith to prevent or correct the materially misleading statements alleged herein.

116. Accordingly, Plaintiff alleges that Cubbage's participation in the oversight structure implicated by the misconduct and his conscious disregard of the resulting risks expose him to a substantial likelihood of liability for breach of fiduciary duty, rendering demand futile.

**G. Demand is Excused as to Defendant Freeland**

117. Defendant Freeland served as a director throughout the Relevant Time Period. The 2026 Proxy reports that Freeland received $200,000 in director compensation during 2025, consisting of $75,000 in cash compensation and $125,000 in stock awards. This compensation is alleged as context rather than as an independent ground for demand futility.

118. During the Relevant Time Period, Freeland served on both the Compensation Committee and Technology Committee.

119. As a Technology Committee member, Freeland was responsible for assisting the Board in overseeing Hyliion's product and technology roadmaps and providing input concerning the Company's technology strategy, including assessing technology partnerships, and advising the Board concerning collaborative arrangements and alliances.

120. Freeland's Compensation Committee responsibilities also connected him to Hyliion's commercialization strategy because the Company tied portions of executive

compensation directly to advancement and commercialization of the KARNO Power Module and to stock-price performance.

121. Plaintiff alleges that Freeland consciously disregarded these particularized oversight responsibilities and failed to ensure adequate scrutiny of the VFG relationship before Hyliion publicly promoted it as a strategically significant partnership. Accordingly, Freeland faces a substantial likelihood of liability for breach of his fiduciary duties.

**H. Demand is Excused as to Defendant Trent**

122. Defendant Trent served as a director throughout the Relevant Time Period. The 2026 Proxy reports that Trent received $215,000 in director compensation during 2025, consisting of $90,000 in cash compensation and $125,000 in stock awards. Plaintiff relies upon this compensation only as contextual evidence concerning Trent's relationship with Hyliion and not as an independent basis for establishing demand futility.

123. During the Relevant Time Period, Trent served as Chair of the Nominating and Corporate Governance Committee and as a member of the Compensation Committee.

124. The Nominating and Corporate Governance Committee was charged with evaluating the performance of the Board, its committees, and individual directors and with reviewing corporate-governance issues and developments and bringing emerging governance matters to the Board's attention. As a Compensation Committee member, Trent also participated in oversight of executive performance goals and compensation programs, including programs tied to commercialization of the KARNO Power Module and stock-price performance.

125. Trent also shared the full Board's responsibility for monitoring and assessing Hyliion's strategic risk exposure. The VFG relationship concerned the Company's core commercialization strategy and was publicly promoted as an important avenue for deploying

KARNO Power Modules in the data-center market. Plaintiff alleges that Trent consciously disregarded her governance and Board-level oversight responsibilities and failed to prevent or correct the materially misleading disclosures alleged herein.

126. Accordingly, Plaintiff alleges that Trent faces a substantial likelihood of liability arising from her failure to discharge her fiduciary obligations in good faith, rendering demand upon her futile.

127. Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

## COUNT I

### Breach of Fiduciary Duty
### (Derivatively Against The Director Defendants)

128. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

129. Each of the Director Defendants owed and owes Hyliion the highest obligations of loyalty, good faith, due care, and oversight.

130. Each of the Director Defendants violated and breached their fiduciary duties of loyalty, good faith, candor, and oversight to the Company.

131. The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

132. In addition, the Director Defendants further breached their fiduciary duties owed to Hyliion by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose that: (i) VFG was a newly formed entity with little apparent business activity and only a handful of employees; (ii) VFG lacked the demonstrated operational and financial capabilities commensurate with the large-scale data-center projects publicly attributed to it; (iii) the purported "strategic partnership" was based only on a non-binding letter of intent and remained subject to execution of a definitive purchase agreement; and (iv) as a result, the Company lacked a reasonable basis for representing that the VFG relationship was likely to result in the contemplated deployment of up to 250 KARNO Cores or otherwise materially advance Hyliion's commercialization efforts.

133. The Director Defendants failed to correct any of the wrongs described herein or cause the Company to rectify the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

134. The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's

securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

135. As a direct and proximate result of the breaches of duty alleged herein, Hyliion has sustained and will sustain significant damages.

136. As a result of the misconduct alleged herein, the Director Defendants are liable to the Company.

137. Plaintiff, on behalf of Hyliion, has no adequate remedy at law.

## COUNT II

### Breach of Fiduciary Duty
### (Derivatively Against the Officer Defendants)

138. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

139. The Officer Defendants are executive officers of the Company. As executive officers, the Officer Defendants owed and owe Hyliion the highest obligations of loyalty, good faith, due care, oversight, and candor.

140. The Officer Defendants breached their fiduciary duties owed to Hyliion by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact, failing to disclose that (i) VFG was a newly formed entity with little apparent business activity and only a handful of employees; (ii) VFG lacked the demonstrated operational and financial capabilities commensurate with the large-scale data-center projects publicly attributed to it; (iii) the purported “strategic partnership” was based only on a non-binding letter of intent and remained subject to execution of a definitive purchase agreement; and (iv) as a result, the Company lacked a reasonable basis for representing that the VFG relationship was likely

to result in the contemplated deployment of up to 250 KARNO Cores or otherwise materially advance Hyliion's commercialization efforts.

141. The Officer Defendants failed to correct any of the wrongs described herein or cause the Company to rectify the false and misleading statements and omissions of material fact.

142. As a direct and proximate result of the breaches of duty alleged herein, Hyliion has sustained and will sustain significant damages.

143. As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

144. Plaintiff, on behalf of Hyliion, has no adequate remedy at law.

## COUNT III

## Gross Mismanagement
## (Against All Defendants)

145. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

146. By their actions alleged herein, the Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation.

147. As a direct and proximate result of the Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages.

148. As a direct and proximate result of the gross mismanagement and breaches of duty alleged herein, Hyliion has sustained and will sustain significant damages.

149. As a result of the misconduct alleged herein, the Defendants are liable to the Company.

150. Plaintiff, on behalf of Hyliion, has no adequate remedy at law.

**COUNT IV**

**Waste of Corporate Assets**
**(Derivatively Against All Defendants)**

151. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

152. The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Time Period. It resulted in continuous, connected, and ongoing harm to the Company.

153. As a result of the misconduct described above, the Defendants wasted corporate assets by, inter alia: (i) paying excessive compensation and bonuses to certain of the Company's executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

154. As a direct and proximate result of the waste of corporate assets and breaches of duty alleged herein, Hyliion has sustained significant damages.

155. As a result of the misconduct alleged herein, the Defendants are liable to the Company.

156. Plaintiff, on behalf of Hyliion, has no adequate remedy at law.

**COUNT V**

**Unjust Enrichment**
**(Derivatively Against the Officer Defendants)**

157. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

158. By their wrongful acts, violations of law, and false or misleading statements or omissions of material fact that they caused to be made, the Officer Defendants were unjustly enriched at the expense and to the detriment of the Company.

159. The Officer Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from the Company that was tied to the performance of the Company or its stock price or received compensation or other payments that were unjust in light of the Officer Defendants' bad faith conduct.

160. Plaintiff, on behalf of Hyliion, seeks restitution from the Officer Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Officer Defendants due to their wrongful conduct and breach of their fiduciary duties.

## COUNT VI
## Violation of Section 14(a) of the Exchange Act
## (Against The Director Defendants)

161. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

162. The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The Section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the non-fraud claims.

163. The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained

in the 2026 Proxy. In the 2026 Proxy, the Board solicited stockholder votes to reelect Defendants Boehm, Gustanski, and Knight to the Board.

164. The 2026 Proxy, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reason of the conduct alleged herein, the Director Defendants violated Section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, Hyliion misled and deceived its stockholders by making materially misleading statements that were essential links to stockholders' decision to follow the Company's recommendation and vote to reelect Defendants Boehm, Gustanski, and Knight.

165. Plaintiff, on behalf of Hyliion, thereby seeks relief for damages inflicted upon the Company based upon the misleading 2026 Proxy in connection with the allegedly improper reelection of Defendants Boehm, Gustanski, and Knight to the Board.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

A. Declaring that Plaintiff may maintain this derivative action on behalf of Hyliion and that Plaintiff is a proper and adequate representative of the Company;

B. Against all of the Defendants and in favor of Hyliion for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C. Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D. Awarding Hyliion restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 7, 2026

Respectfully submitted,

**SOMMERMAN, MCCAFFITY, QUESADA & GEISLER, L.L.P.**

*/s/ Sean J. McCaffity*
Sean J. McCaffity
State Bar No. 24013122
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219-4461
214-720-0720 (Telephone)
214-720-0184 (Facsimile)
SMcCaffity@textrial.com

**MCCURDY/HEATH**
Roger Heath
State Bar No. 24067271
990 Walnut Creek, Suite 2014
Mansfield, TX 76063
817-649-8600 (Telephone)
roger@mccurdyheath.com
*(Pro hac vice application forthcoming)*

**BRIAN MURRAY LAW PLLC**
Brian P. Murray
750 E. Main St., Suite 620
Stamford, CT 06902
Telephone: (203) 246-2368
Email: bmurray@brianmurraylaw.com
*(Pro hac vice application forthcoming)*

**ROWLEY LAW PLLC**
Shane T. Rowley, Esq.
Danielle Rowland Lindahl, Esq.
50 Main Street, Suite 1000
White Plains, New York 10606
Phone: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
drl@rowleylawpllc.com
*(Pro hac vice application forthcoming)*

***COUNSEL FOR PLAINTIFF***

**VERIFICATION**

I, Jonathan Clark, am the named plaintiff in the foregoing derivative action. I have read the foregoing Verified Stockholder Derivative Complaint, know the contents thereof, and authorized its filing. The contents alleged therein are true to my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. I further declare that I am a current holder, and have been a holder, of Hyliion Holdings, Corp., common stock during the time period in which the wrongful conduct alleged and complained of occurred.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of September 2026.

Jonathan Clark
Jonathan Clark (Sep 9, 2026 11:39:59 EDT)

Jonathan Clark